also known as E. Appellant, Don Zucker for the Appellant, Dennis M. Hart for the Appellant, and Daniel Lenners for the Appellee. May it please the Court, Jonathan Zucker on behalf of Appellant, request six minutes for rebuttal. I'm inclined to submit on the location argument and just to address the facial insufficiency argument in the brief. This case is controlled by this Court's decision in U.S. v. Glover. What's at issue here is the distinction between 2518, Section 1, which deals with unlawful, versus Section 2, which deals with facial insufficiency. Glover clarified the difference between the two, and what is of critical consequence here is that in a facial insufficiency argument, Glover ruled that the Court is to apply a mechanical test. There's no room for judicial discretion. If the Court finds that it is facially insufficient, the statutorily mandated remedy is suppression. In this case, Judge Lambert found that the order was facially insufficient because of the absence of the name of the designated U.S. attorney. Breyer, but you weren't saying that characterization is binding on us. Which characterization? That it's facially insufficient? Right. I believe it is. I believe it is. I don't think there's any you get into whether it's. That's a purely legal classification and label, right? Well, I'm not sure it is. Whether or not the warrant was contained, the designated U.S. attorney is a factual question. There's no dispute that that name wasn't on it. Now, whether as a result of that, I mean, it's clear that the statute requires that. I'm talking about the characterization. Of facial insufficiency. And it's not disputed that the name was missing. Right, right. That's an undisputed fact. That certainly gets, there's no question about that. Whether the decision, then, that this makes it a factually, a facially insufficient warrant, I'm sorry, order, is, I would suggest because the fact is undisputed that the court should be bound. Now, if we choose to classify that as. I understand what you're saying. I mean, it's a purely legal classification. Once the facts are absolutely clear, isn't it? I'd say it's mixed. But I understand the Court's point that whether or not an order is facially insufficient is a question of law. But the fact is not in dispute. And therefore, I would say it's hard to come to any other conclusion since the statute clearly says the order has to name the designated U.S. attorney or designated assistant AG that's making the decision. Right. So I would say it's, you know, where should it be characterized in that? I don't think it can seriously be disputed that the order is facially insufficient, whether we call that a question of fact or a question of law. So under the statute, had we the circumstances that existed in the Third Circuit where there was only one deputy assistant U.S. attorney, would that make a difference? It could. It could. Because I think that actually would probably be classified as potentially a technical defect that might be applicable. I mean, certainly the Third Circuit found that way. I'd say it's probably inconsistent with Glover, but you certainly could. But the distinction you point is the significant distinction here. We cannot say what, we cannot say based on the face of the order alone who applied for this or who approved it. The application is really the question. You say on the basis of the order alone, but there wasn't any question in the application and affidavit that there was in fact approval by a duly authorized official. I'm not contesting that. But the application is fine. I raise no challenge to the application itself. And why don't we see the application as sort of part of the order, incorporated by reference in the order, the supporting document on which the order is based? Because Glover and the statute says you have to look at the order, and the order is either facially sufficient or it's not. And if it's not facially sufficient, you cannot refer to and incorporate, I think it was the Moore case where they talked about other factors known to the issuing judge who approved it, about who would have actually done it and the structure of the office. And in this instance, it's either, it either stands or falls on the order itself. The statute is very clear on that. Let me ask you in the Supreme Court case where Assistant Attorney General Wilson's on the order, even though he was not the official who authorized the application, but rather one of his deputies. There were actually two. They were decided on the same day, the Chavez and the Giordano case. And I think he was on all four. Let me finish my question. Oh, I'm sorry. So the order was facially incorrect in the sense that the Assistant Attorney General Wilson was not the authorizing official, and there wasn't anything to suggest that he had delegated in this particular, in that particular case, his authorizing authority to a particular deputy. How does Glover fit with the Supreme Court's analysis? Because they involve two different sections of the statute. And I'm not sure whether you're talking about the Giordano or Chavez case, because that was the fact in both those. But those cases were not decided on facial sufficiency. In both those cases, the Supreme Court held that the orders themselves were facially sufficient. The issue was, were they lawful? And the unlawful, that's a Section 2 analysis. And that unlawfulness gets a different, I'm sorry, it's a Section 1 analysis. I misspoke. I reversed them. It's a Section 1 analysis. An unlawful gets a core concerns analysis. And there the court ruled, there were two, there were two in one case in which it was the executive assistant. The court had no problem finding that was unlawful and suppressing that. There were two in the other case where, again, it was said that it was Wilson in both cases. But in one it turned out to be, I think, the same executive assistant. And the last one was actually approved by then Attorney General John Mitchell. And the court said because the Attorney General himself had approved it, therefore it was lawful. But, again, that was a challenge under a different part of the statute. And the ruling enunciated in Glover would not be applied. Because that was a core concerns analysis under unlawfulness, not under facial sufficiency, which is what we have here. My time is up. Anything else before I sit down? Or wait for a moment? One quick question. The minimization issue that you raised? That was actually going to be addressed by another counsel. No problem. No problem. Who is arguing that? Mr. Hurte? Yes. Thank you. Thank you. If it pleases the Court, my name is Dennis Hurte. I'm here on behalf of Eric Scurry. As the Court knows, Mr. Scurry has some individual issues that I would like to address. Perhaps I should first address the issue of minimization. If the Court has a question on that, I'd be happy to. Well, I didn't want to take your time, but my question is, have you abandoned that? We would submit on it. We have no further argument on it. All right. So you have no response to the government's citation to Cano Flores? That's correct. All right. Thank you. The issue that I would like to address in the minutes I have left are the requirement in the statute for a full and complete statement of the facts in the application. Now, as the Court knows, Mr. Scurry was the first wiretap authorized, and all the others follow from that. And so an examination of Mr. Scurry's affidavit and application in the area of probable cause and necessity we think reveals deficiencies which affect all of the affidavits and applications that follow. Our argument is based on the axiom that an informed decision is essential to deciding the issue of probable cause and necessity, and an informed decision by the authorizing judge is only possible with a full and complete statement of the facts. If someone says this is close enough, that doesn't satisfy the fact, the requirement of the statute. And the reason for that I believe is that the Congress recognized that wiretaps are an unusual, an extraordinary effort by law enforcement, and that they should have very strict judicial scrutiny. So close enough is not good enough in a wiretap issue. In our reply brief, we've isolated two areas that we asked the Court to consider. The first is the prior prosecution of Mr. Scurry. Mr. Scurry was prosecuted in this jurisdiction for the same offense two years earlier. He was acquitted before a different judge of the same offense, the same location, possibly by use of the same government witnesses. We know he was prosecuted by the same prosecutor. So that was one count? In the case for Judge Leon, it was one count, yes. Distribution. I brought a map, which I cannot give to the Court, but. No point in showing it then. So you think these charges are the same as that one count charge? Well, the distribution of cocaine. And by Google, they're about 300, 400 feet apart. So when you asked the district court to consider it, what did you intend that the district court do to find in your favor? I must admit I did not ask the district court to consider that. So this is plain error review? It is. All right. But if I take the position if it's plain enough to me, when I look at the two docket sheets. Would a prior acquittal be admissible in a trial? It depends on the reason for its admission. My point is that it was a fact which should have been known to the authorizing judge, a fact which should have been made known. So what would the connection be? Well, the connection, Your Honor, is that the affidavit for the first scurry affidavit, the basis for the first scurry affidavit is based on the prior sales by CW1, CW2. We don't know who these people are, but there is a good reason to believe that they participated in the first trial of Mr. Scurry for the same offense. We're talking about proof beyond a reasonable doubt versus probable cause. And that could be explained by the government. Our point is not that it's a slam dunk for Mr. Scurry. Our point is that the authorizing judge was never informed of this. So is your point that in applying for an affidavit, the government must list all the prior interactions with the criminal justice system? No, I'm not willing to go that far. All right. So the best – I'm just trying to understand the argument. The best would be that if you had some reason to think the lead investigating detective or the FBI agent had some bias against your client. I'm just trying to understand what the judge would do with this information. Or could we include the same prosecutor? So the same prosecutor cannot be involved? Oh, not at all. Not at all. I don't mean to say that. What I mean is – I know. So the judge says one count before acquitted, same prosecutor, same investigating officers, maybe same cooperating witnesses. So why doesn't that hurt your case as opposed to – Because the judge was never in a position to make that determination because he was never told of this prior acquittal. I'm assuming these experienced district court judges may have an inkling that people who are charged with these vast drug conspiracies may have had some contact with the criminal justice system beforehand. I just want to know what it is. I can understand if you had some proffer of bias or something like that. But just the fact of a prior acquittal? Yes. Two years before by the same location, the same offense, and the same prosecutor. I think that's too much of a coincidence to sweep under the rug. It has to be examined. A coincidence of what? The coincidence is the unlawful activity that has to be included in the affidavit. The basis for the wiretap that there's probable cause that there's been criminal activity and not coincidentally there's going to be overlap where someone has an ongoing business in illegal narcotics. I'm not sure that the evidence may overlap. It's a similar conduct. But I think what we're asking is without more, what is so obviously probative about the prior court case that it is defective when it's excluded? And I think you could make arguments either way, that including it, if you have a proffer of bias or a bias theory that you're raising, maybe it's permissible. I'm not saying it would be required. Excluding it also has virtues. It's saying, look, we're just going to put before you fresh evidence, judge, you know, clean slate. Does it add up to something that the government can go after? I think we're just missing why this would be required without more of a theory of bias or retaliation. And I agree with most of what Your Honor says. I don't disagree with that. But my point is that it was never presented to the authorizing judge. There could be no determination of that irrelevancy or possible bias because it was kept silent by the application for the wiretap. But they could have a third cooperating witness whose information wasn't put before the judge, and that's just a call on the part of the investigating officials, unless you have gone further and made a case that there's something being hidden by its exclusion. And I don't see that there's even a sort of prima facie proffer on that point. Well, the only thing I can say is that the statute requires a full and complete statement of the surrounding facts. Right. It seems obvious to me at least that that's a surrounding fact that was not disclosed in the initial application. I cannot argue that there was bias. I cannot argue that there's a smoking gun there. I cannot do that because it was never brought up. And one might say that it was biased to include it. A judge would say, ah, this is someone that we've put a lot of resources into. Let me see this person as more of a bad actor than I would have without that. So actually in some ways it's more, it's a less tainted way for the investigators to approach it, less tainted against the defense. I mean. If Your Honor wants to view it that way, I can't dispute that. It may well be correct, but my point is that the authorizing judge never had a chance to make that decision. What's your strongest case? Hopefully it's this case. All right. I just want to be clear. My strongest case, I think, will be this case. Before I sit down, I wanted to remind the Court we had a second. Oh, so what you're saying is that the affidavit was legally insufficient because it failed to let the district court judge know that the same prosecutor, the same witnesses. Possibly same witnesses. I don't know that. Had been involved in a prosecution two years earlier of your client for a drug crime that occurred in the same location as the conspiracy now at issue. Yes, Your Honor. All right. That's it. Thank you. Good morning, and may it please the Court. Dan Lenners for the United States. Appellants cite no case, and the government is not aware of any, in which any court has suppressed a wiretap based on the kind of minor typographical issue, typographical error at issue in two of the wiretaps here. I have to say, Mr. Is it Lennerts? Lennerts, Your Honor. Lennerts, that the characterization of this as a typographical error, I think, really is stretching it. I really don't think that does your position, makes it as credible as you would like, because it's not the error on the part of someone typing something up. It's a failure of including information. They didn't misspell someone's name or call an AAG a deputy AG, or, you know, it's not that, it's not a typographical error. It's an omission. It's an omission. And the problem is, I understand, and we've seen the cases from other jurisdictions that say this is a technical, kind of a technical error, and we'll overlook it. The problem for us is that we have precedent in our circuit, the Glover case, which seems to repudiate the analysis that the other circuits have used, which is the technical defect analysis. And so what's your argument that, given that we're not allowed to use a core concerns analysis under Section 2 in our circuit, how do you get us there? Excuse me, Your Honor. Glover merely says that if an order is facially insufficient, that it must be suppressed. It doesn't address the question of what constitutes a facial insufficiency. And Glover recognizes that there could be space, and we submit that based upon 40 years of precedent in other circuits, there should be space between a perfect order and an order that is insufficient on its face. This order was not facially insufficient. It contained all of the statutory requirements. It made clear that the judge had considered the application and the material submitted by the government and had approved that application based upon the fact that the surveillance had been authorized by a deputy assistant attorney general who had that authority under a very specific AG memorandum. Although it didn't include all of the statutory requirements, did it? Because under 4D, one of the requirements that has to be in each order is the identity of the person authorizing the application. And that wasn't in the order where there were asterisks. The name wasn't. The identity was in terms of their title, the level at the Department of Justice of the person who authorized the application, a deputy assistant attorney general who was authorized to do so by a specific attorney general. But counsel argue that there are more than one person who fills that, such a slot. That's correct. Thank you, Your Honor. There are multiple people. The record doesn't establish how many, but we know from the record that at least three different deputy assistant attorneys general authorized the wiretap applications at issue here. We would point the Court to the Ninth Circuit's decision in Staffel, which addressed when an order or an authorization is facially insufficient. And the Ninth Circuit set forth a test that it's facially sufficient if, on the basis of the information that appears on the face of the order, it could reasonably be believed that it meets all of the statutory requirements. So when Congress was concerned about identifying the authorizing official, am I correct in understanding your argument to be that even if that Congress' concern is satisfied so long as the attorney general title is referred to in the order? In other words, why would Congress have put that language in the statute if all it meant was that so long as the attorney general or his authorized designee approved the application? Yes, Your Honor. Chavez discussed why the language was put forth in the statute, and it was to fix responsibility. Right. And responsibility can be fixed in multiple ways. And for what purpose? It appears that in the wake of Watergate and other issues, that they wanted to make sure you could identify the parties responsible for authorizing a particular wiretap application. There's no question that responsibility was fixed here. There's no dispute that we know who the deputy assistant attorneys general are who authorized these. How they change, as you know. I mean, somebody resigns, gets another job, and we're trying to track down who it is who actually authorizes. Don't you see any difference? I mean, I realize 1968 was a very different time in terms of the attitude about wiretaps. The war on drugs has changed things, but changed the law. Let me just put it that way. But, I mean, what's left to the requirement if it doesn't matter if a name is on there, much less whose name? I mean, suppose it just said, you know, a deputy attorney general, Joe Smith, who is a deputy attorney general, but had nothing to do with this case. But there is a name on it. That's what I'm trying to understand in sort of the Supreme Court's point that I was discussing with counsel. Yes, Your Honor. Chavez makes clear that identifying an official who could, under the statute, authorize a wiretap. Who could even if he didn't? Yes. Which he did not in Chavez. Nevertheless, that order is not facially insufficient. Because the Supreme Court looked and found that the order at issue in Chavez was actually authorized by the attorney general. And Chavez very narrowly could stand for the proposition, as the Ninth Circuit has recognized, that you simply look to see if there is a potential authorizing official on the face of the order. But the Ninth Circuit has recognized that Chavez more broadly stands for the proposition that the Supreme Court is concerned about whether the documents before the district court fix responsibility. And here they clearly did. Everyone knows. But do you see any difference? I understand here what Congress is trying to get at. Suppose that you have four deputies and one just signs off on anything. Everybody knows, take it to Joe, he'll sign off. Whereas Jim is a real stickler. Every T has to be properly crossed, every I dotted. Does Congress care which of those two has authorized? That's not clear, Your Honor. The Supreme Court's discussion of fixing responsibility looked at the level of authorization within the Department of Justice. They discussed the fact that there could be no question in a case where the assistant attorney general was thought by the district court to have authorized the intercept, that if the attorney general himself is the one who did it, that the district court would nevertheless have approved it. And so Congress, at least in Chavez, the Supreme Court saw Congress's focus on the responsibility within the Department of Justice and not the name of the particular individual, which, as this Court noted, changes somewhat routinely. But it's the identity of the agency and the person authorizing. And I think there's a natural understanding that if it's a job title that includes a category of people, that each one of those people can think, well, I have a little anonymity. Whereas we all know if responsibility is fixed on you by name, if it's an error, you're going to come out and fix it. If it's your job category, you know, are you going to have an incentive to come out and fix it? And or, I mean, I think Judge Rogers was pointing out that people gain, part of the way they gain reputations for being either a stickler or lax is that their name is affixed to work over time. And it seems that one of the things that the decisions in this area tell us is that Congress was concerned that this not be an institutional, bureaucratic kind of decision, but that it be a decision that people are, you know, putting their reputations on. And there's no question that that's exactly what occurred here. The Deputy Assistant Attorneys General signed their own name to the authorization memos. Those memos. Breyer. I mean, that takes us to the question of what is the order. I mean, for certain purposes, it's clear that the order is different from the application. But to what extent do the application and order travel together under department policy and rules? As a matter of practice, they are submitted to the district court all as part of the same package. Okay. And the district court has them before it at the same time. So they have the application, the authorization memo, the proposed order, and then the order to the telecommunications company that's going to assist with the intercept. These are all together before the district court at the same time. The district court signs the order, which says it has considered the other materials, including, in this case, the authorization memos that very specifically identified the specific Deputy Assistant Attorney General responsible for authorizing it. Okay. And then it goes into a sealed file of some sort? When I say it, I mean the whole package. I don't know how the district court keeps its record keeping. Pete, what happens to the order? My understanding is that the order alone gets returned to the investigative agency. And the order is a public document. What about the supporting documentation? I trust that would remain under seal because of the confidential nature of Your understanding, counsel, I want to be clear as to what the Justice Department's view is on that. I would have to ask my colleagues about which documents are returned to the Assistant U.S. Attorney and the law enforcement agents. My understanding is that all of the documents remain under seal. Including the order. Because otherwise one could figure out who is being wiretapped. And in this case, they were all under seal at the time appellants filed their brief. It was only when the U.S. Attorney's Office moved the district court to unseal all of the materials before filing our brief that we then filed the applications orders and our brief in the public record. And would the seal prevent defense counsel from having the, getting access to the backup papers? My understanding is they were all provided to defense counsel in discovery here. Well, in this case, but it was the department that caused the seal to be lifted, right? No, they were all provided to defense counsel in discovery below. In discovery below. Okay. Just the basis for their motion before the district court. I see. Okay. Okay. At that point. When the sealed documents are provided to counsel, they're provided solely to defense counsel for purposes of, I'm just trying to understand literally what happens to this order. Your Honor, I'm informed that the application and the order are placed under seal during the course of the investigation. That they're provided to defense counsel after the investigation itself is unsealed. In other words, an indictment has returned and the defendants have been arrested and appointed counsel. So as a practical matter, the judge signs the order. All the papers are sealed. The assistant U.S. attorney in the case gets a copy of all the sealed documents. And what does, what happens in the field? The application, the assistant United States attorney prepares and is signed by the law enforcement agency. So there's no reason to get that back from the district court. The order, once it's signed by the district court, I would assume a copy is given to the assistant United States attorney. And the law, and it gives the, and the district court gives its authorization to law enforcement to initiate the wiretap at that time by signing the order. As well as another document that's not in the record here, which is an order to the communications provider to the degree its assistance is needed as part of the wiretap. So is your interpretation then sort of no harm, no foul? And that Congress's concern about privacy and setting up a series of hoops through which the government has to jump successfully does, does not matter? It's not that it does not matter, Your Honor. It's that there's a difference between a perfect order and a facially insufficient order. And that the ---- But you agree we're not talking about typos in the way that Judge Pillard suggested. Somebody didn't misspell a name or a word. That's correct, Your Honor. It was an inadvertent omission of a name that was known to the district court at the time it signed the order. That is on the materials in the record that were provided to defense counsel that was never attempted to be hidden. There's no question that this was a lawful wiretap and that it did dot all the i's and cross all the t's. It's merely the inadvertent omission of a name that was known to everyone at the time the district court entered the order from the order itself. And that does not make the order facially insufficient by looking at the documents on the face. One would reasonably believe that the statutory commands had been complied with and, in fact, they had been complied with. So because Congress was so concerned about privacy, constitutional rights, et cetera, why should this court not require strict compliance instead of allowing sloppiness to prevail? Well, if this court were to reverse the district court, it would do so in the face of 40 years of every other court who had looked at an issue like this not suppressing the contents of the wiretap. Well, I understand your point about Glover creating a circuit split, but I think as far as this panel is concerned, we're bound by Glover. And what happened 40 years, you know, is irrelevant as far as this panel is concerned. It's not Glover we're taking issue with, Your Honor. It's the ultimate outcome of finding that these other courts who have looked at the question, Your Honor asked about Congress's intent with regard to privacy, the other courts who have looked at this question have found that part of the reason suppression isn't required is because it wasn't a core concern of Congress's, this type of omission from the order. What I'm getting at is just that this court has rejected that type of analysis. And for reasons that are rooted in the statute, so even if we were to put Glover aside, the question remains how you can give meaning to subsection 2 and also have your technical errors exception. What isn't something that's inadequate on its face, insufficient on its face, that isn't also just unlawful under subsection 1 that would not be excused by the exception you're urging us to adopt? Like, isn't, doesn't it render subsection 2 a nullity? Were we to rule? No, Your Honor. If the district court omitted any analysis of probable cause from its order, but nevertheless the application set forth sufficient probable cause for the authorization of a wiretap and all the other statutory requirements were complied with, that order would clearly be facially insufficient, but the wiretap itself would not be unlawful. Why would it be facially insufficient if this isn't facially insufficient? You're saying it's skipping one of the requirements of the statute, and one of the requirements of the statute is to identify the person, and it may be more words that are omitted if probable cause isn't in there, but it's jumping over a category of information that the statute appears to require to be included. It wouldn't satisfy the statutory requirement in that case, because one looking at the order wouldn't know from its face that the statute had in fact been complied with. That's true here, too. You look at the order and you say, well, there's no person identified here, and I don't know who the deputy assistant attorney general of the criminal division is, but this could be ten people. No person has been identified. I disagree, Your Honor. I believe that looking at the face of this order, one would reasonably believe that the statutory command had been complied with because the district court said it considered the application, considered the underlying authorization materials that a district, a deputy assistant attorney general who was clearly known to the district court, given that there was an asterisk and merely an inadvertent omission. It's not as though who had been specifically authorized, who had been specifically authorized to exercise that authority by a specific attorney general order. In other words, looking at the face of this order, one would reasonably believe that the statutory command had been complied with because the district court said it considered the application, considered the underlying authorization materials that a district, a deputy assistant attorney general who was clearly known to the district court, given that there was an asterisk and merely an inadvertent omission. And it noted the order under which the attorney general had authorized that person to authorize intercepts. That order applies to a limited number of people. Kagan. Why doesn't the order, which, as you say, is typically drawn up by the government, why doesn't the gap that's so obvious with asterisks in it, the fact that that remains in the order as signed, why doesn't that instead make us think the district judge didn't look at this at all? There's no reason to conclude from this record that the district court didn't consider those materials. There was a lengthy affidavit which clearly established probable cause. How do we know, though? There's no, these are not procedures that take place on a record. I believe this Court's case law makes clear that they assume that the district courts act in conformity with the statements they make in their orders, and there's no reason. Well, the statements that the government serves up to them in an order that the government's giving them, as you, I mean, that's how you characterized it. That the district court nevertheless signs after considering all of the materials before it. Right. And we just have a question mark about that because the district judge knows that asterisks are not a name and shouldn't be in a final document. So, just circling back on the point that we had had about whether the order and the application travel together, in the application submitted by the government for interceptions, this is at the supplemental appendix ending up on page 64. The government requests that the order, the application and the accompanying affidavit and interim reports be sealed, except that copies of the orders in full or redacted form may be served on the FBI, the U.S. Attorney, and the service providers as necessary to effectuate the court's order. So, it does seem like the order itself is the operative document that gets separated and circulated as telling people what's going on throughout the investigative team. Is that right? That seems like a fair characterization, Your Honor. Tell me what the test is that you would have us adopt. We think the Ninth Circuit's test in Staffelt is apt. The Ninth Circuit is really dealing with a slightly different issue, isn't it? It's dealing with the sufficiency of the application, not with the facial insufficiency of an order. The Ninth Circuit applies the same facial insufficiency test to both applications and orders. And so, the test set forth in Staffelt, while that case itself dealt with an application, broadly used the terms application or orders. Tell us the test. I'm sorry? Tell us the test that you'd like us, like, what's the term, like, what's the Yes, Your Honor. An application or an order is facially sufficient if, on the basis of the information that appears on its face, it could reasonably be believed that it meets all the statutory requirements, including the requirement that a duly empowered Justice Department official authorize the application for the particular wiretap being sought, unless that the wiretap is warranted. That's quoted in our brief. It's the Ninth Circuit's Staffelt decision, 451 F. 3rd, 578, 582. Going back to my question, if we could. When we said in Glover, there is no room for judicial discretion, when I read that, I thought that means this circuit is saying strict conformance with the statutory requirement. As you've described the process, the application, the affidavit, a proposed order is submitted to the district court by the assistant U.S. attorney. Is that correct? Yes, Your Honor. Why doesn't the assistant U.S. attorney put the name of the person in the proposed order, as opposed to an asterisk? The assistant U.S. attorney should have. When the assistant U.S. attorney prepares the application and the affidavit and the proposed order, it then is submitted to Maine Justice for ultimate approval. There's a section within the criminal division called the Office of Enforcement Operations. They are responsible for ensuring compliance with both the statutory and internal justice department requirements. Once that is signed off by that office, it then goes to a deputy assistant attorney general for his or her approval, and it is only once that approval is obtained that the materials then go back to the assistant U.S. attorney, who then submits them to the judge. It is at that point that the assistant U.S. attorney should then fill in the name that was before then unknown to him or her of the approving officer before submitting it to the court. That one step did not occur in two of the wiretaps at issue here. One quick question here. I know your position that the district court erred when it found that the order was facially insufficient. In Glover, we said that the technical violation on which the district court relied was wrong, and we reversed that. Doesn't that limit our ability to adopt the Ninth Circuit's approach? No, Your Honor. The district court's finding of facial insufficiency is a legal conclusion that this Court reviews de novo. The factual finding is not in dispute that there was an asterisk in the place of the name. Glover says that if the court finds facial insufficiency, it must suppress. Glover leaves open the question at issue here of what constitutes facial insufficiency in the Ninth Circuit. But it rejected the view that the district court's technical notion was a proper way to interpret the statute, didn't it? It rejected an importation of the core concerns test into the if you find facial insufficiency, can it nevertheless be a technical error that doesn't require suppression? It said no. If you find facial insufficiency, suppression is required. It then went on to say even if in this case we think that there's a difference between perfection and facial insufficiency, which the government believes there is and the Ninth Circuit has found there is, that the mistake in that case was nevertheless a core concern and wasn't a mere technical insufficiency that would save the application in that case. If there are no further questions, we would ask that the judgments of the district court be affirmed. Thank you. Thank you. All right. Counsel for, just let me get this on the record. Counsel for? Savoy. For whom? Well, it's actually for all the defendants that are being affected by this. All right. For everyone. Right. I misspoke, Judge Rogers, in my response to you earlier this morning. It was the traits case I was relying on. That's the one where there was a single person who held that position. Which case? Traits. U.S. v. Traits. Right. But again, I'm just correcting, you know, I misspoke with the site. Right. But we were talking about the same set of circumstances. Right. Right. The ruling is correct. I just gave you the wrong site. And Morton was the one that talked about you can't look outside the warrant and incorporate other things in assessing the rule. This is slightly different. What other things were at issue there? Yeah. I frankly don't even recall what was at issue in Morton. It was not facial sufficiency. I will concede that. But it makes a difference whether the outside things are in the application and supporting memo or just out in the world. That's probably a fair statement. But to put it more explicitly, the things that go before the judge versus things that don't necessarily go before the judge. I would agree with you as a general proposition, but I think in determining whether or not an order is facially sufficient, you cannot consider things that are outside the order. I understand, obviously, the linguistic argument. Right. But putting aside core concerns, is there any concern manifested in the statute that is invaded, denounced, impinged upon by a rule that allows looking at the application and supporting memo, the documents that go to the judge? I misinterpreted what your question was going to be. I would say in this case, if I could make a couple quick points first. Regarding the core concerns test, that is not applicable here. Absolutely. Absolutely. That's why I said. That's why my question was directed to any concern, totally regardless of whether it's core or completely trivial. I would say the response is yes. And what is of concern here, you have to look at the history of Title III, and the concerns to be addressed were really well laid out in Justice Douglas' dissent in the Chavez-Giordano analysis, because when this Title III was put into effect, it was considered such a departure and such an infringement on privacy concerns that all these different safeguards were imposed. One was a safeguard that it's not just anybody. It has to be either the AG or a specialty-designated person to make sure they're reviewed. But the other safeguard was that a report had to be filed by the judiciary listing what warrants were issued and who the special assistant, who the designated assistant was, so that the public could review these and supervise these, and there would be exactly what Judge Rogers was implying before. So there would be some scrutiny. Breyer. So this report is a new thing to me anyway. So how is this report prepared? I have no experience in it, and I believe it's prepared by the judges, and it's reported listing every Title III wiretap, and they're supposed to include within it the name of the required. Well, if it's the judge who prepares it and there's a slot on the form for the authorizing person, would not the judge look beyond the order? I understand this is linguistically tricky because it's not on the face of the order, but in filling in that form, wouldn't he go to the supporting documents? He could have access. He or she could have access to that, of course. But in this instance, no report was prepared, I assume, because Judge Kennedy retired before the reports were due that year. So there is no report. But the point at issue is the point that Judge Rogers implicitly was making about the additional level of scrutiny that's required, and that's why the name of the requesting or the authorizing AG or deputy AG is so critical here. And that's why the statute says without it, it's facially insufficient. It would require it to be there, and it strictly is a Section 2 violation. It's facially insufficient. If it's facially insufficient, the mandatory remedy is suppression. It's to enforce upon the prosecutors that level of scrutiny, and so that their actions could be evaluated. I know we've discussed this in the court concerns, but the prosecutors talked about 40 years of history flying in the face of this decision. But the 40 years of history and all of those cases cited in their section 11, in their footnote number 11, are all based upon Section 1 unlawfulness. None of them, from what I've seen, are based on facial insufficiency. We really don't have, do we, an example of something that would be facially insufficient that wouldn't be excused by the rule that the prosecutor has proposed, do we? I can't imagine one. I mean, I think the only example. I mean, I can't imagine there would be anything that was facially insufficient that wouldn't be, that they wouldn't come up with an argument that was excused because the application covers all the court concerns. I mean, I think the example was probable cause, but that's not required to be in the order, the way the identity of the authorizing person is or the nature and location type of communication and the identity of the target. Those are the things that are required to be in the order. The judge is supposed to have found those, and they don't necessarily need to list them in their order. They just have to have found them based on, assumedly, on the application. There is, I guess, one technical, and I'm trying to remember the case. It was a case where the judge had not signed the order, and it was said it's facially insufficient. It's in our brief. Right. No, and the court sustained it, saying that it's a matter of internal court procedure whether a judge's signature is required or not to make the order effective, but that that's not something that the statute governs. Exactly. Exactly. I think the argument there was it was technically, it was insufficient on its face because it wasn't signed by the judge, and the ruling was it doesn't have to be, essentially. It doesn't have to have the actual physical signature. So I guess that's about as close as I could come. I haven't seen a case that actually would fit within the category of facially insufficient that would not be swept away by the exception or that would not also be invalid under Subsection 1. Right. And that's where you get into the whole issue brought up in Giordano about the surplusage, that if you apply core concerns under Section 1, then Section 2 and 3 become virtually surplusage and virtually meaningless. So if they're to have any effect, and that's what Glover was so strong on, if they're to, you have to read them as having some effect. If you read them as being encompassed in Section 1 and excused by core concerns, then they basically get wiped out. And they shouldn't be wiped out. Congress passed them. All right. Thank you. We'll take the cases under advisement.
judges: Rogers, Pillard, Williams